RECEIVED BY MAIL

MAR 16 2021

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

NEWS > CRIME & PUBLIC SAFETY

# Inmates at Roseville halfway house cite fears after coronavirus 'spread like wildfire'

SCANNED

MAR 16 2021

U.S. DISTRICT COURT MPLS



A sign directs people to the Roseville Residential Reentry Center, operated by Volunteers of America MN/WI, in Roseville. (John Autey / Pioneer Press)

By **MARA H. GOTTFRIED** | mgottfried@pioneerpress.com | Pioneer Press

Special offer: Only 99¢ for the first 3 months.          SUBSCRIBE >          ✖

CASE 0:21-cv-00716-WMW-DTS Doc. 1-1 Filed 03/16/21 Page 2 of 58

PUBLISHED: September 2, 2020 at 5:42 a.m. | UPDATED: September 2, 2020 at 12:16 p.m.

As the coronavirus cases piled up at a Roseville halfway house, some residents say their health has been put in danger.

The Roseville Residential Reentry Center houses people after they serve time in federal or state prison, while they're starting jobs and finding housing. There were 18 confirmed cases of COVID-19 connected to the facility as of Tuesday, according to the Minnesota Department of Health.

Residents say they've been forced to quarantine in risky situations. The facility, meanwhile, says room sizes are in accordance with federal and state corrections guidelines.

But with U.S. Attorney General William Barr in March directing the federal Bureau of Prisons to identify older and at-risk inmates for release to home confinement, due to the coronavirus pandemic, some residents question why they have to continue to stay at the Roseville halfway house. They say they were eligible for home confinement before the COVID-19 outbreak.

The facility, operated by Volunteers of America MN/WI, encourages and supports "home confinement whenever appropriate," said Steve Nelson, communications director.

## HOME CONFINEMENT VS. HALFWAY HOUSE

One resident, Mike Geraci, said he's past the date he was eligible for home confinement. And he said he has asthma, which can put people at increased risk for severe illness from COVID-19.

Geraci, 32, said he's been doing "everything you hope would happen" when someone is released from prison. He served nine years for a federal firearm offense and arrived at the halfway house on July 15.

He said he got a job, has been going to Alcoholics Anonymous meetings and attending church — all "stuff I've never done in my life before."

Special offer: **Only 99¢ for the first 3 months.** **SUBSCRIBE ›** ✖

CASE 0:21-cv-00716-WMW-DTS   Doc. 1-1   Filed 03/16/21   Page 3 of 58

Before the outbreak, Geraci was working at a distribution center and earning enough to rent a studio apartment. But Geraci said he wasn't allowed to leave to look for an apartment — he said the halfway house cited the risk of coronavirus, though he believes he would have been safer if he was put on home confinement before people started getting sick.

Due to COVID-19, the VOA weighed various factors when deciding whether to permit someone to leave to look for housing, according to Nelson.

Federal inmates, in their final months before their release from custody, may transfer to a halfway house or home confinement, where they're monitored, said Bureau of Prisons spokesman Justin Long.

Corrections workers determine the date people are eligible for home confinement. The VOA then makes a recommendation, which is based on a person having stable, verified housing, along with their record on peaceful behavior and following rules, according to Nelson. Corrections officials have the final say.

Nelson said being assigned to a reentry center like the one in Roseville can be stressful.

"They can taste freedom but technically they're still incarcerated," Nelson said. "… We want to provide a safe and welcoming environment, but we also need to balance that with the accountability demanded."

## INITIALLY HAD TO GO FOR TESTING BY BUS

Another resident, Ronnie Reed, was also concerned about coronavirus — he is 58 and already had lung problems. When he felt sick Aug. 17, he said it wasn't easy to find a place to get tested.

"You'd think a place like this would be a little more responsible and have a plan in place," Reed said. "… It just spread like wildfire around here."

He said he was worried about putting others at risk, but had to take a bus to the hospital for a test on Aug. 18. He found out the next day he had COVID-19.

Since MDH has been involved, they've done in-facility testing and sent some residents by ambulance for testing, Nelson said.

Special offer. **Only 99¢ for the first 3 months.**          **SUBSCRIBE ›**          

CASE 0:21-cv-00716-WMW-DTS Doc. 1-1 Filed 03/16/21 Page 4 of 58

Previously, people going for testing were offered N-95 masks, face shields and gloves, according to Nelson. He said the facility wasn't equipped to provide transportation, though many went with relatives or in private transportation.

## HEALTH DEPARTMENT TESTING

The Minnesota Department of Health, along with Ramsey County Public Health and VOA Roseville, decided to test all residents and staff, according to Doug Schultz, an MDH spokesman. That happened last Wednesday, six days after MDH says they learned of the first case of a resident having COVID-19.

The testing will continue weekly until no new cases are identified, Schultz said.

The Bureau of Prisons will not be sending people to the Roseville facility until the number of cases "significantly declines," Long said Monday. There have been seven confirmed cases among federal inmates.

There are 19 people on Minnesota Department of Corrections work release status at the facility, nine who have tested positive for COVID-19, according to Nick Kimball, DOC spokesman. DOC will continue monitoring the situation.

They "have assured us they are able to appropriately isolate and quarantine as needed," Kimball said.

## QUARANTINE CONCERNS

Geraci said he and other residents have been required to quarantine since last week. He was initially housed with three other men in a room that he said is too small to allow for social distancing.

He and his roommates tested negative for COVID-19 last week, but men in the room next door tested positive and they had to continue sharing a bathroom.

Nelson said in the one instance of a shared bathroom between rooms at the facility, residents were issued disinfectant for it and offered access to another restroom.

Special offer: **Only 99¢ for the first 3 months.**          **SUBSCRIBE >**          ✖

CASE 0:21-cv-00716-WMW-DTS   Doc. 1-1   Filed 03/16/21   Page 5 of 58

On Saturday, Geraci started feeling sick. He was moved to a single room, though Geraci said it was just vacated by a man who tested positive for COVID-19. He said the man's belongings remained, as did his linens on the bed.

Nelson said they weren't aware of that situation "and if that were to happen, and we were informed, it would have been corrected immediately."

On Monday, Geraci was taken by ambulance to the hospital to be tested. He found out Tuesday that he tested negative for COVID-19, but was told by his case manager he still has to quarantine.

Tags:  **Coronavirus,   Health,   Minnesota,   Ramsey County,   Roseville**

SPONSORED CONTENT



## Start planning your week with monday.com

By Project-Management.com

monday.com helps teams work more efficiently to execute projects that deliver results on time.

## Mara H. Gottfried | St. Paul crime and public safety reporter

Mara Gottfried has been a Pioneer Press reporter since 2001, mostly covering public safety. Gottfried lived in St. Paul as a young child and returned to the Twin Cities after graduating from the University of Maryland. You can reach her at 651-228-5262.

mgottfried@pioneerpress.com

f Follow Mara H. Gottfried mara.gottfried 🐦 Follow Mara H. Gottfried @MaraGottfried

As you comment, please be respectful of other commenters and other viewpoints. Our goal with article comments is to provide a space for civil, informative and constructive conversations. We

Special offer: Only 99¢ for the first 6 months    SUBSCRIBE ›    ✖

p. Establish Greatest, High, and Moderate severity level prohibited acts for abuse of the mail.

q. Establish a sanction of monetary fine.

r. Remove the formal sanctions of reprimand and warning.

s. Increase the sanction of disciplinary segregation from a range of 7 to 60 days to a range of 1 to 18 months.

t. Change from three work days to five work days for the UDC to ordinarily conduct a review.

u. The Special Housing Unit policy (conditions of disciplinary segregation, administrative detention, and protection cases) has been removed and guidance is provided in a separate program statement.

## 3. PRINCIPLES

Several general principles apply to every disciplinary action:

a. Incident reports can be written by Bureau staff, Federal Prison Industries (FPI) staff, and Public Health Service (PHS) officers detailed to the Bureau. Community Corrections Managers may take disciplinary action on inmates in contract RRC's.

b. Staff take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.

c. Staff control inmate behavior in an impartial and consistent manner.

d. Disciplinary action may not be capricious or retaliatory.

e. Staff may not impose or allow corporal punishment of any kind.

## 4. DIRECTIVES AFFECTED

a. **Directive Rescinded**

P5270.08         Inmate Discipline and Special Housing Units (12/4/09)

b. **Directives Referenced**

P1315.07         Inmate Legal Activities (11/5/99)
P1330.16         Administrative Remedy Program (12/31/07)
P1505.03         Language Translations Used in Official Documents (10/31/97)



ALDF-6C-18.

## 6.  INSTITUTION SUPPLEMENTS

None required.

## 7.  NOTICE TO INMATE OF THE INMATE DISCIPLINE PROGRAM

Staff must give each inmate a copy of the following documents promptly after his/her arrival at an institution:

\#    Summary of the Inmate Discipline System (Appendix B).
\#    Inmate Rights and Responsibilities (Appendix C).
\#    Prohibited Acts and Available Sanctions (Table 1).

Receipt of these documents must be noted on the intake screening form and maintained in the inmate's central file.  The receipt is kept in the inmate's central file.

To the extent reasonably available, a qualified staff member or translator will help an inmate who has a language or literacy problem, in accordance with the Program Statement **Language Translations Used in Official Documents**.

## Appendix C.  INMATE RIGHTS AND RESPONSIBILITIES

### RIGHTS

1.  You have the right to expect that you will be treated in a respectful, impartial, and fair manner by all staff.

2.  You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution.

3.  You have the right to freedom of religious affiliation and voluntary worship.

4.  You have the right to health care, which includes nutritious meals, proper bedding and clothing,- and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles, and medical and dental treatment.

5.  You have the opportunity to visit and correspond with family members and friends, and correspond with members of the news media, in accordance with Bureau rules and institution guidelines.

6.  You have the right to unrestricted and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment.)

### RESPONSIBILITIES

1. You are responsible for treating inmates and staff in the same manner.

2. You have the responsibility to know and abide by them.

3. You have the responsibility to recognize and respect the rights of others in this regard.

4. It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it.

5. It is your responsibility to conduct yourself properly during visits.  You will not engage in inappropriate conduct during visits to include sexual acts and introduction of contraband, and not to violate the law or Bureau guidelines through your correspondence.

6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court.

CASE 0:21-cv-00716-WMW-DTS   Doc. 1-1   Filed 03/16/21   Page 9 of 58
Case: 0:20-cv-02661-PAM-ECW    Document #: 14-1    Date Filed: 01/13/2021    Page 4 of
SecurManage: Form Print 02661-PAM-ECW   Doc. 7-4   Filed 01/06/21   Page 6 of 6   Page 1 of 3
CASE 0:20-cv-02661-PAM-ECW

## Federal Acknowledgment

**Name:** Michael  Geraci  **DOC#:** Randy Nikula
**REG#:** 16492-041  **Case Manager:** Felicia Perez
**Date of Arrival:** 07/16/2020 05:44 PM  **Staff Entered:** Felicia Perez
**Facility:** Roseville-Male

FEDERAL ACKNOWLEDGEMENT

I hereby acknowledge that I have received a copy of, and have read or have had read to me, the rules and policies governing my stay at the Volunteers of America Residential Center, that I fully understand all rules, regulations, my responsibilities and expectations, and that I agree to abide by and comply with them. This includes acknowledgement of the Bureau of Prisons Prohibited Acts.

Signature:

07/21/2020 09:11

Date:

7/21/2020

Staff Witness:

07/21/2020 09:11

Date:

7/21/2020

As a condition of my participation in a community program, I will not consume any poppy seeds or any items containing poppy seeds. I understand that the consumption of poppy seeds may cause a positive drug test resulting in disciplinary action.

Signature:

07/21/2020 09:11

RECEIVED
BY MAIL
JAN 1 3 2021
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI: CPD/CSB
NUMBER: 5270.09
DATE: July 8, 2011.

# Inmate Discipline Program

*/s/*
*Approved*: Thomas R. Kane
Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

### § 541.1 Purpose.

**This subpart describes the Federal Bureau of Prisons' (Bureau) inmate discipline program. This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts. Sanctions will not be imposed in a capricious or retaliatory manner. The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).**

### § 541.2 Application.

**This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons.**

This policy applies to all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with or convicted of offenses against the United States; D.C. Code felony offenders; and persons held as witnesses, detainees, or otherwise. These provisions do not apply to Federal inmates designated to a non-Federal facility (e.g., inmates serving Federal sentences in state or county facilities).

**Federal Regulations from 28 Code of Federal Regulations, part 541, are shown in this type.**
Implementing instructions are shown in this type.



**U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E   N O T I C E
OPI:        CPD/CPB
NUMBER:  5270.09, CN-1
DATE:      November 18, 2020

# Inmate Discipline Program

*/s/*
*Approved*: M.D. Carvajal
Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following change to Program Statement 5270.09, **Inmate Discipline Program**, dated July 8, 2011. Additional discipline code, noted by highlighted text will be added to the program statement as follows:

**Table 1. PROHIBITED ACTS AND AVAILABLE SANCTIONS**

### HIGH SEVERITY LEVEL PROHIBITED ACTS

**231    Requesting, demanding, pressuring, or otherwise intentionally creating a situation, which causes an inmate to produce or display his/her own court documents for any unauthorized purpose to another inmate.**



GEORGE DECLARATION
EXHIBIT

A

P-A0288
JAN 17

**INCIDENT REPORT**

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

**Part I – Incident Report**

| | |
|---|---|
| 1. Institution: Volunteers of America – Residential Reentry Center | Incident Report Number: 102 |

| 2. Inmate's Name: Michael GERACI | 3. Register Number: 16492-041 | 4. Date of Incident: 9/30/20 | 5. Time: 0017 |
|---|---|---|---|

| 6. Place of Incident: Front Entrance RRC | 7. Assignment: CCC | 8. Unit: Bureau of Prisons |
|---|---|---|

| 9. Incident: Escape (over 4 hours) | 10. Prohibited Act Code (s): 102 |
|---|---|

11. Description of Incident (Date: _9/30/20_____    Time: __0017_____    Staff became aware of incident):

On 9/30/20 at 0017, Mr. Geraci 16492-041 walked past the control center with his backpack and one trash bag out the front door past staff. As of 0807, the writing of this IR, Mr. Geraci has yet to return to VOARRC.

Based on the information above, Mr. Geraci is charged with code 102, specifically escape (over 4 hours).

| 12. Typed Name/Signature of Reporting Employee:<br><br>Ashley Sykora (Program Manager) | 13. Date And Time:<br>9/30/20  0807 |
|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature): Ryan Korhonen | 15. Date Incident Report Delivered:<br>11/19/20 | 16. Time Incident Report Delivered:<br>1020 |

-A0288
JAN 17

**INCIDENT REPORT**

**U.S. DEPARTMENT OF JUSTICE**

**FEDERAL BUREAU OF PRISONS**

**Part I – Incident Report**

| 1. Institution: Volunteers of America – Residential Reentry Center | Incident Report Number: 101 | |
|---|---|---|
| 2. Inmate's Name: Michael GERACI | 3. Register Number: 16492-041 | 4. Date of Incident: 9/29/20 | 5. Time: 1748 |
| 6. Place of Incident: Dining Room VOARRC | 7. Assignment: CCC | 8. Unit: Bureau of Prisons |
| 9. Incident: Assaulting any person | 10. Prohibited Act Code (s): 101 | |

11. Description of Incident (Date: _9/29/20_____  Time: __1748_____ Staff became aware of incident):

On 9/29/20 at 1748, Mr. Geraci 16492-041 walked up to Matthew Taylor 14450-041 who was sitting down at the dining room table. They appear to exchange some words and Mr. Geraci walks away. Seconds later, Mr. Geraci returns to the table Mr. Taylor is sitting at and throws a total of 6 punches at Mr. Taylor hitting him twice in his left eye and once to the body.

Based on the information above, Mr. Geraci is charged with code 101, specifically assaulting any person.

| 12. Typed Name/Signature of Reporting Employee: Ashley Sykora (Program Manager) | 13. Date And Time: 9/30/20  0801 |
|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature): Ryan Korhonen | 15. Date Incident Report Delivered: 11/19/20 | 16. Time Incident Report Delivered: 1008 AM |

**Table 1. PROHIBITED ACTS AND AVAILABLE SANCTIONS**

**GREATEST SEVERITY LEVEL PROHIBITED ACTS**

**100   Killing.**

**101   Assaulting any person, or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished).**

**102   Escape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape from outside a secure institution.**

**103   Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, *e.g.,* in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329).**

**104   Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon.**

**105   Rioting.**

**106   Encouraging others to riot.**

**107   Taking hostage(s).**

**108   Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.,* hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).**

**109   (Not to be used).**

**110   Refusing to provide a urine sample; refusing to breathe into a Breathalyzer; refusing to take part in other drug-abuse testing.**

**111   Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.**

112  Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

113  Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

114  Sexual assault of any person, involving non-consensual touching by force or threat of force.

115  Destroying and/or disposing of any item during a search or attempt to search.

196  Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act.

197  Use of the telephone for an illegal purpose or to commit or further a Greatest category prohibited act.

198  Interfering with a staff member in the performance of duties most like another Greatest severity prohibited act.  This charge is to be used only when another charge of Greatest severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.

199  Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act.  This charge is to be used only when another charge of Greatest severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.

## AVAILABLE SANCTIONS FOR GREATEST SEVERITY LEVEL PROHIBITED ACTS

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1.  Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 12 months).



**Appendix B.  SUMMARY OF INMATE DISCIPLINE SYSTEM**

1.  Staff becomes aware of inmate's involvement in incident or once the report is released for administrative processing following a referral for criminal prosecution.

    ordinarily maximum of 24 hours

2.  Staff gives inmate notice of charges
    by delivering Incident Report.

    maximum ordinarily of 5 work days from the
    time staff became aware of the inmate's
    involvement in the incident.  (Excludes
    the day staff become aware of the inmate's
    involvement, weekends, and holidays.)

    3.      Initial review (UDC)

    minimum of 24 hours
    (unless waived)

4.  Discipline Hearing Officer (DHO) Hearing

**NOTE**:  Time limits are subject to exceptions as provided in the rules.

Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while undertaking informal resolution.  If informal resolution is unsuccessful, staff may reinitiate disciplinary proceedings.  The requirements then begin running at the same point at which they were suspended.



**CHAPTER 4.**

**§ 541.7  Unit Discipline Committee (UDC) review of the incident report.**

**A Unit Discipline Committee (UDC) will review the incident report once the staff investigation is complete.  The UDC§s review involves the following:**

**(a)  *Available dispositions.*  The UDC will make one of the following decisions after reviewing the incident report:**

**(1)  You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**

**(2)  You did not commit the prohibited act(s) charged; or**

**(3)  The incident report will be referred to the Discipline Hearing Officer (DHO) for further review, based on the seriousness of the prohibited act(s) charged.**

**(4)  If you are charged with a Greatest or High severity prohibited act, or are an inmate covered by § 541.4, the UDC will automatically refer the incident report to the DHO for further review.**

**(b)  *UDC members.*  The UDC ordinarily consists of two or more staff.  UDC members will not be victims, witnesses, investigators, or otherwise significantly involved in the incident.**

The Warden designates ordinarily two or more unit staff members to hold an initial review and impose available sanctions upon completion of the investigation of alleged misconduct for moderate category and low category offenses.  One staff member UDCs are permitted when other members are not reasonably available.

Only one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO.

A staff member witnessing an incident may serve on the UDC in cases where virtually every staff member in the institution witnessed the incident in whole or in part.

A staff member may not sit on the UDC without successfully completing the self-study program for UDC certification.

Each Warden must select at least one UDC Trainer to monitor the progress of staff participating in the self-study program.

Blow up 3 copies

If an inmate waives the right to appear at the UDC review, the UDC ensures the inmate is advised of the rights afforded at a hearing before the DHO (see forms for Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO)).

(h) Written report. You will receive a written copy of the UDC§s decision following its review of the incident report.
The UDC prepares a record of its proceedings, which need not be verbatim. A record of the hearing and supporting documents is kept in the inmate's central file.



The UDC gives the inmate a written copy of the decision and disposition by the close of business the next work day. Action taken as a minor disposition may be reviewed under the Administrative Remedy Program (see 28 CFR Part 542, Subpart B.).

All UDC member(s) must print their name and sign Part II of the incident report to certify they served on the UDC and that the completed Part II accurately reflects their review.

When the UDC finds the inmate committed the prohibited act charged or a similar prohibited act reflected in the incident report, the chair ensures the information is entered into SENTRY in the Chronological Disciplinary Record.

(i) Appeals. You may appeal the UDC§s action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B.

P5270.09 7/8/2011  Federal Regulations are shown in this type. Implementing instructions: this type.
27
The Program Statement Administrative Remedy Program covers the regulations in 28 CFR Part 542, Subpart B. In addition to a review under the Administrative Remedy procedure, the Warden or designee audits and reviews discipline hearings and dispositions to ensure conformity with this policy.

When the UDC holds a full review and determines that the inmate did not commit a prohibited act of Moderate or Low severity, the UDC expunges the inmate's file of the incident report and related documents.
P5270.09 7/8/2011  Federal Regulations are shown in this type. Implementing instructions: this type.
28
CHAPTER 5.
§ 541.8 Discipline Hearing Officer (DHO) hearing.
The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC. The DHO§s hearing involves the following:
(a) Available dispositions. The DHO will make one of the following decisions after a hearing on the incident report:
(1) You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;
(2) You did not commit the prohibited act(s) charged; or
(3) The incident report will be referred back for further investigation, review, and disposition.
(b) Discipline Hearing Officer. The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.
The term Discipline Hearing Officer (DHO) refers to a one-person, independent officer who conducts hearings and imposes sanctions for incidents of misconduct referred by the UDC. A DHO may not conduct

3 copies

administrative processing.  However, the inmate should be advised of the delay, and if appropriate, the reason for the delay.

(d)  Inmate appearance.  You are permitted to appear before the UDC during its review of the incident report, except during UDC deliberations or when your presence would jeopardize institution security, at the UDC's discretion.  Also:
 (1)  You may appear either in person or electronically (for example, by video or telephone conferencing) at the UDC§s discretion.
 (2)  You may waive your appearance before the UDC.  If you waive your appearance, the UDC will review the incident report in your absence.
 (3)  If you escape or are otherwise absent from custody, the UDC will conduct a review in your absence at the institution where you were last confined.
 The UDC must document its reasons for excluding an inmate from the hearing.

A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign, by a memo indicating the inmate's refusal to appear (Waiver of Appearance (BP-A0307)).

(e)  Evidence.  You are entitled to make a statement and present documentary evidence to the UDC on your own behalf.  The UDC will consider all evidence presented during its review.  The UDC's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.  The phrase "some facts" refers to facts indicating the inmate committed the prohibited act.  The phrase "greater weight of the evidence" refers to the strength of the evidence.

(f)  Sanctions.  If you committed a prohibited act(s), the UDC can impose any of the available sanctions listed in Tables 1 and 2, except loss of good conduct sentence credit, disciplinary segregation, or monetary fines.

P5270.09  7/8/2011    Federal Regulations are shown in this type.   Implementing instructions: this type.
26
(g)  Referral to the DHO.  If the UDC refers the incident report to the DHO for further review, the UDC will advise you of your rights at the upcoming DHO hearing, as detailed in § 541.8.
 The UDC is prohibited from imposing the sanctions of make monetary restitution or monetary fines.

The UDC forwards copies of relevant documents to the DHO with a statement of reasons for the referral, along with recommendations for sanctions if the DHO finds the inmate has committed the act or another prohibited act.  The UDC Chair records reasons for the referral and recommendations for disposition in the "Committee Action" section of the incident report.  Recommendations are contingent upon a DHO finding that the inmate committed the act.

When charges are referred to the DHO, the UDC advises the inmate of the rights afforded at a hearing.  The UDC asks the inmate to choose a staff representative, if any, and the names of witnesses the inmate wishes to be called to testify and what testimony they are expected to provide.  The UDC advises the inmate that he/she may waive the right to be present at the hearing, but still have witnesses or a staff representative appear on his/her behalf.



**CHAPTER 5.**

**§ 541.8  Discipline Hearing Officer (DHO) hearing.**

**The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC.  The DHO§s hearing involves the following:**

**(a)  *Available dispositions.*  The DHO will make one of the following decisions after a hearing on the incident report:**

**(1)  You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**

**(2)  You did not commit the prohibited act(s) charged; or**

**(3)  The incident report will be referred back for further investigation, review, and disposition.**

**(b)  *Discipline Hearing Officer.*  The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.**

The term Discipline Hearing Officer (DHO) refers to a one-person, independent officer who conducts hearings and imposes sanctions for incidents of misconduct referred by the UDC.  A DHO may not conduct hearings without receiving specialized training and passing a certification test.  If the institution's assigned DHO is unable to conduct hearings, the Warden arranges for another DHO, who must be certified.

The DHO may not hear any case not referred by the UDC.  Only the DHO has authority to impose or suspend sanctions A through E.

**(c)  *Timing.*  You will receive written notice of the charge(s) against you at least 24 hours before the DHO§s hearing.  You may waive this requirement, in which case the DHO§s hearing can be conducted sooner.**

The inmate does not appear before the DHO less than 24 hours before receiving written notice, unless he/she is to be released from custody within that time or waives the 24-hour notice requirement.

**(d)  *Staff Representative.*  You are entitled to have a staff representative during the DHO hearing process as follows:**

*regular step*
*through*

(e) Inmate appearance.  You are permitted to appear before the DHO during the hearing on the incident report as follows:

P5270.09  7/8/2011    Federal Regulations are shown in this type.   Implementing instructions: this type.
30
(1)  You may appear either in person or electronically (for example, by video or telephone conferencing), at the DHO's discretion.
 (2)   Your appearance may be prohibited during DHO deliberations or when your presence would jeopardize institution security, at the DHO's discretion.
 (3)  You may waive your appearance before the DHO.  If you waive your appearance, the DHO hearing will be conducted in your absence.
 (4)  If you escape or are otherwise absent from custody, the DHO will conduct a hearing in your absence at the institution where you were last confined.
 Although an inmate may waive the right to be present, he/she may elect to have a staff representative and witness(es) appear.

The DHO must document reason(s) for excluding an inmate from the hearing.  An inmate may waive the right to be present, provided the waiver is documented and reviewed by the DHO.  A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign, by a memo signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear.

The DHO may conduct a hearing in the absence of an inmate when the inmate waives the right to appear.  If an inmate escapes or is otherwise absent, the DHO conducts a hearing in the inmate's absence at the institution in which the inmate was last confined.  When an inmate returns to custody following an absence during which sanctions were imposed by the DHO, the Warden has the charges reheard before the DHO, ordinarily within 60 days after the inmate's arrival at the institution to which he/she is designated after return to custody, following an appearance before the UDC at that institution.

The UDC ensures that the inmate is aware of all rights for an appearance before the DHO, including delivery of charge(s), advisement of the right to remain silent, and other rights exercised before the DHO. Procedural requirements before the DHO apply to this in-person hearing, except that written statements of witnesses not readily available may be liberally used in place of in-person witnesses.

The DHO may affirm the earlier action taken, dismiss the charge(s), modify the finding of the original DHO as to the offense committed, or modify sanctions imposed in the inmate's absence.

When an inmate escapes, and is in local custody where a hearing may be held, an in-person rather than in-absentia hearing may be held at the DHO's discretion.

(f)  Evidence and witnesses.  You are entitled to make a statement and present documentary evidence to the DHO on your own behalf.   The DHO will consider all evidence presented during the hearing.   The DHO§s decision will be based on

P5270.09  7/8/2011    Federal Regulations are shown in this type.   Implementing instructions: this type.
31

*Blow of regular size*

hearings without receiving specialized training and passing a certification test. If the institution's assigned DHO is unable to conduct hearings, the Warden arranges for another DHO, who must be certified.

The DHO may not hear any case not referred by the UDC. Only the DHO has authority to impose or suspend sanctions A through E.

(c) Timing. You will receive written notice of the charge(s) against you at least 24 hours before the DHO§s hearing. You may waive this requirement, in which case the DHO§s hearing can be conducted sooner. The inmate does not appear before the DHO less than 24 hours before receiving written notice, unless he/she is to be released from custody within that time or waives the 24-hour notice requirement.

(d) Staff Representative. You are entitled to have a staff representative during the DHO hearing process as follows:

P5270.09  7/8/2011    Federal Regulations are shown in this type.   Implementing instructions: this type.
29

(1) How to get a staff representative. You may request the staff representative of your choice, so long as that person was not a victim, witness, investigator, or otherwise significantly involved in the incident. If your request(s) cannot be fulfilled, and you still want a staff representative, the Warden will appoint one. The Warden will also appoint a staff representative if it appears you are unable to adequately represent yourself before the DHO, for example, if you are illiterate or have difficulty understanding the charges against you.

(2) How the staff representative will help you. Prior to the DHO§s hearing, the staff representative will be available to help you understand the incident report charges and potential consequences. The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO§s hearing. During the DHO§s hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings. The staff representative can also assist you in presenting evidence during the DHO's hearing.

(3) How the staff representative may appear. Your staff representative may appear either in person or electronically (for example, by video or telephone conferencing) at the DHO§s discretion. If your staff representative is not available for the scheduled hearing, you may either select another staff representative, request the hearing be postponed for a reasonable amount of time until your staff representative can appear, or proceed without a staff representative.

The Warden provides a full-time staff member to represent an inmate, if requested. If the request cannot be fulfilled, and the inmate still wants a staff representative, the Warden will appoint one. The executive staff, the DHO or alternate DHO, reporting officer, investigating officer, witnesses to the incident, and UDC members involved in the case may not be staff representatives. The Warden may exclude other staff in a particular case or when there is a potential conflict.

The DHO arranges for the presence of the staff representative selected by the inmate. If the staff member declines or is unavailable, the inmate can select another representative, wait a reasonable period for the staff member's return, or proceed without a representative. The DHO affords a staff representative adequate time to speak with the inmate and interview witnesses. While it is expected that a staff member will have ample time to prepare before the hearing, delays to allow additional preparation may be ordered by the DHO.

| Part III - Investigation | 22.   Date And Time Investigation Began<br>9/29/20 at 5:48 PM |
|---|---|

**23.   Offender Advised Of Right To Remain Silent:** You Are Advised Of Your Right To Remain Silent At All Stages Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process.  You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act.

The Offender Was Advised Of The Above Right By -Ryan Korhonen At (Date/time) - 11/19/20 at 10:08 AM

**24.   Offender Statement And Attitude**

On 11/19/20 this writer conducted the investigation on Mr. Geraci, at Volunteers of America, Roseville, MN via phone.  He was asked about his alleged violation of code #101 Assaulting any person.

Mr. Geraci pled not guilty and gave the following statement: "I got threatened by dude. He threatened me so I came and responded to getting in a fight. I was in a fight, not an assault. He struck with closed fists back. This is way beyond 24 hours."

**25.   Other Facts About The Incident, Statements Of Those Persons Present At Scene, Disposition Of Evidence, Etc.**

Mr. Geraci walked up to another resident who was sitting down at the dining room table. Some words were exchanged and Mr. Geraci eventually started throwing punches.

Based on the information above, Mr. Geraci is charged with Code #101 - Assaulting any person

**26.   Investigator's Comments And Conclusion**

Mr. Geraci clearly was aware of the BOP and RRC rules and requirements. His actions of assaulting another person clearly support a finding of guilty of code #101 Assaulting any person.

**27.   Action Taken**

Recommend disallow available good conduct time.

Date And Time Investigation Completed    11/19/20   10:08 PM

Printed Name/signature Of Investigator    Ryan Korhonen

_____          Field Verification Technician
Signature                                 Title

Page 3
BP-S205.073

**Part II – Committee Action**

| 17. Comments of Inmate to Committee Regarding Above Incident: | B.     The Committee is referring the Charge(s) to the DHO for further Hearing. |
| 18. A. It is the finding of the committee that you: <br> _____ Committed the Prohibited Act as charged: <br> _____ Commit a Prohibited Act. <br> _____ Committed Prohibited Act Code (s). 102 | C. X   The Committee advised the inmate of its finding and of the right Did not <br> to file an appeal within 20 calendar days. |

19. Committee Decision is Based on Specific Evidence as Follows:

The CDC reviewed the rights with the inmate during the CDC hearing. The inmate confirmed receipt of rights form and an understanding of the rights. The inmate also confirmed that a staff representative or witness were not requested.

The CDC reviewed the evidence and found there is some evidence to support the charge based on the following:

The incident report states, "On 9/30/20 at 0017, Mr. Geraci 16492-041 walked past the control center with his backpack and one trash bag out the front door past staff. As of 0807, the writing of this IR, Mr. Geraci has yet to return to VOARRC.

Based on the information above, Mr. Geraci is charged with code 102, specifically escape (over 4 hours)

During the investigation, the inmate pled guilty and gave the following statement: "When did the US Attorney's Office decline prosecution? If so this is untimely."

During the CDC hearing the inmate pled guilty and made the following statement: "I was stressed out, I got into that fight and panicked because I was not going to be able to go on home confinement anymore. I did leave and I am not going deny that".

BOP/VOARRC rules and regulations- pages: 23&24- Residents must have explicit permission from staff on duty to leave the VOARRC.

Federal Acknowledgement of rules form - signed by Mr. Geraci– indicating he received a copy of and understood said rules and regulations regarding accountability requirements.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

Disallow available good conduct time.

21. Date and Time of Action: 11/19/2020 – 1030 pm. (The UDC Chairman=s signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

| Chairman (Typed Name/Signature): | Member (Typed Name): | Member (Typed Name): |

INSTRUCTIONS: All items outside of heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.

Distribute: Original-Central File Record; COPY-1-DHO: COPY-2-Inmate after UDC Action; COPY 3-Inmate within 24 hours of Part I Preparation

PDF                            Prescribed by P5270                 Replaces BP-A0288 of AUG 11

D. **Make monetary restitution.**

E. **Monetary fine.**

F. **Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).**

G. **Change housing (quarters).**

H. **Remove from program and/or group activity.**

I. **Loss of job.**

J. **Impound inmate's personal property.**

K. **Confiscate contraband.**

L. **Restrict to quarters.**

M. **Extra duty.**

## HIGH SEVERITY LEVEL PROHIBITED ACTS

**200   Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.**

**201   Fighting with another person.**

**202   (Not to be used).**

**203   Threatening another with bodily harm or any other offense.**

**204   Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.**

**205   Engaging in sexual acts.**

**206   Making sexual proposals or threats to another.**

**207   Wearing a disguise or a mask.**

**208** Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.

**209** Adulteration of any food or drink.

**210** (Not to be used).

**211** Possessing any officer's or staff clothing.

**212** Engaging in or encouraging a group demonstration.

**213** Encouraging others to refuse to work, or to participate in a work stoppage.

**214** (Not to be used).

**215** (Not to be used).

**216** Giving or offering an official or staff member a bribe, or anything of value.

**217** Giving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose.

**218** Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value.

**219** Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored).

**220** Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized by staff).

**221** Being in an unauthorized area with a person of the opposite sex without staff permission.

**222** (Not to be used).

**223** (Not to be used).

**CENTER DISCIPLINE COMMITTEE REPORT (RRC)**     **U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| NAME OF INMATE: | Michael Geraci | | | REGISTER NUMBER: | 16492-041 | |
|---|---|---|---|---|---|---|
| INCIDENT DATE: | 09-30-2020 | INCIDENT REPORT DATE: | 09-30-20 | HEARING DATE: | 11/19/20 | |
| CODE & SUMMARY OF CODE: | | 102 | | Escape (over 4 hours) | | |

**I. NOTICE OF CHARGE(S)**

| Incident Report Delivered On: | 11/19/20 | | DHO Signature: | | |
|---|---|---|---|---|---|

A. Advance written notice of the charge(s) (copy of the incident report) was given to the inmate on:

| Date: | 11/19/20 | Time: | 1020 | By (staff member's name): | | Ryan Korhonen |
|---|---|---|---|---|---|---|

B. The CDC Hearing was held on (date):   11/19/20    Time: 1030

C. The inmate was advised of his rights before the CDC and was provided a copy of his rights by:
Staff Member's Name: Josue G. Cruz    Date: 11/19/20

**II. STAFF REPRESENTATIVE**

| A. Staff Representative Requested: | Yes: | X | No: | | Waived at CDC Hearing: | |
|---|---|---|---|---|---|---|
| Staff Representative Name: Brenda Mort | | | | | N/A | |
| Staff Representative Statement: | | | | | | |

C. Requested staff representative declined or could not appear. The inmate was advised of the option to postpone the hearing to obtain another staff representative with the result that:

During the investigation, the inmate was offered a staff representative that consisted of Renville County Jail staff or VOA-RRC staff (via phone) to ensure that due process was not violated. The inmate refused both of those options and insisted that staff gets ahold of Brenda Mort to be his staff representative. Staff informed Mr. Geraci that was not an option and that his staff representative had to be Renville county staff or VOA-RRC staff.

**III. PRESENTATION OF EVIDENCE**

A. Inmate has been advised of his right to present a statement, or to remain silent, to present documents, including written statements of unavailable witnesses, and for relevant and material witnesses to appear on his behalf at the CDC hearing.

| The inmate | Admits: | | Denies: | X | Silent: | | the charge(s). |
|---|---|---|---|---|---|---|---|

Summary of Inmate's Statement:

During the investigation, the inmate pled guilty and gave the following statement: "When did the US Attorney's Office decline prosecution? If so this is untimely."

During the CDC hearing the inmate pled guilty and made the following statement: "I was stressed out, I got into that fight and panicked because I was not going to be able to go on home confinement anymore. I did leave and I am not going deny that".

**C. Witnesses**

| 1. The inmate requested witnesses: | Yes: | | No: | X |
|---|---|---|---|---|

2. The following witnesses appeared at the CDC hearing:

| Name: | | Register # or Title | |
|---|---|---|---|
| Statement: | | | |
| Name: | | Register # or Title | |
| Statement: | | | |
| Name: | | Register # or Title | |
| Statement: | | | |

3. The following witness(es) requested were not called for the following reasons

| Name: | | Register # or Title | |
|---|---|---|---|
| Reason: | | | |
| Name: | | Register # or Title | |
| Reason: | | | |
| Name: | | Register # or Title | |
| Reason: | | | |

GEORGE DECLARATION EXHIBIT G

| 4. The following witness(es) were unavailable and submitted written statements. | | Yes: | | No: | | N/A: | X |
|---|---|---|---|---|---|---|---|
| Name: | | Register # or Title | | | | | |
| Statement: | | | | | | | |
| Name: | | Register # or Title | | | | | |
| Statement: | | | | | | | |
| Name: | | Register # or Title | | | | | |
| Statement: | | | | | | | |

**D. Documentary Evidence**

In addition to the incident report and investigation, the CDC considered the following documents:

Any documents considered by the CDC are listed in section V of this report.

| E. Confidential information was considered by the CDC and was not provided to the inmate. | Yes: | | No: | X |
|---|---|---|---|---|

If yes, the confidential information was not released to the inmate due to safety of individuals and/or the security the institutions. The information was deemed reliable by the CDC because several individuals provided similar independent information and/or an individual provided specific information that corroborated existing evidence.

**IV. FINDING OF THE CDC**

| X | The act was committed as charged. |
|---|---|
| | The following act was committed: |
| | No prohibited act was committed.  The incident report was expunged. |

**V. SPECIFIC EVIDENCE RELIED ON SUPPORT FINDINGS**

The CDC reviewed the rights with the inmate during the CDC hearing.  The inmate confirmed receipt of the rights form and an understanding of the rights.  The inmate also confirmed that a staff representative or witnesses were not requested.

The CDC reviewed the evidence and found there is some evidence to support the charge(s) (if admitted), or the greater weight of the evidence shows you committed the prohibited act(s) (if denied) based on the following:

The incident report states, "On 9/30/20 at 0017, Mr. Geraci 16492-041 walked past the control center with his backpack and one trash bag out the front door past staff. As of 0807, the writing of this IR, Mr. Geraci has yet to return to VOARRC.

Based on the information above, Mr. Geraci is charged with code 102, specifically escape (over 4 hours)

During the investigation, the inmate pled guilty and gave the following statement: "When did the US Attorney's Office decline prosecution? If so this is untimely." Staff created incident report on a timely manner. RRC staff was waiting on RRM office to be notified of inmate's apprehension and whether he was going to be formally charged with other charges, to conduct the investigation and hearing process. Once RRC was notified of inmate's apprehension, staff proceeded to contact Renville county jail to conduct investigation and hearing process.  During the investigation, the inmate was offered a staff representative that consisted of Renville County Jail staff or VOA-RRC staff (via phone) to ensure that due process was not violated. The inmate refused both of those options and insisted that staff gets ahold of Brenda Mort to be his staff representative. Staff informed Mr. Geraci that was not an option and that his staff representative had to Renville county staff or VOA-RRC staff.

During the CDC hearing the inmate pled guilty and made the following statement: "I was stressed out, I got into that fight and panicked because I was not going to be able to go on home confinement anymore. I did leave and I am not going deny that". Although the inmate gives a reason for committing the prohibited act, it does not relieve him of his actions. The inmate has the responsibility to maintain clear conduct while serving his sentence. The inmate's time in an RRC should be used to establish positive decision-making patterns for successful entry into society as a law-abiding citizen. The inmate chose to break a rule and the law, showing he needs more time to adjust.

BOP/VOARRC rules and regulations- pages: 23&24- Residents must have explicit permission from staff on duty to leave the VOARRC.



**CENTER DISCIPLINE COMMITTEE REPORT (RRC)**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| NAME OF INMATE: | Michael Geraci | | | REGISTER NUMBER: | 16492-041 | |
|---|---|---|---|---|---|---|
| INCIDENT DATE: | 09-29-2020 | INCIDENT REPORT DATE: | 09-30-20 | HEARING DATE: | | 11/19/20 |
| CODE & SUMMARY OF CODE: | | 101 | | Assaulting any person | | |

## I. NOTICE OF CHARGE(S)

| Incident Report Delivered On: | 11/19/20 | | DHO Signature: | | |
|---|---|---|---|---|---|

A. Advance written notice of the charge(s) (copy of the incident report) was given to the inmate on:

| Date: | 11/19/20 | Time: | 1008 | By (staff member's name): | | Ryan Korhonen |
|---|---|---|---|---|---|---|

| B. The CDC Hearing was held on (date): | 11/19/20 | Time: 1020 |
|---|---|---|

C. The inmate was advised of his rights before the CDC and was provided a copy of his rights by:

| Staff Member's Name: Josue G. Cruz | Date: 11/19/20 |
|---|---|

## II. STAFF REPRESENTATIVE

| A. Staff Representative Requested: | Yes: | X | No: | | Waived at CDC Hearing: | |
|---|---|---|---|---|---|---|
| Staff Representative Name: Brenda Mort | | | | N/A | | |
| Staff Representative Statement: | | | | | | |

C. Requested staff representative declined or could not appear. The inmate was advised of the option to postpone the hearing to obtain another staff representative with the result that:

During the investigation, the inmate was offered a staff representative that consisted of Renville County Jail staff or VOA-RRC staff (via phone) to ensure that due process was not violated. The inmate refused both of those options and insisted that staff gets ahold of Brenda Mort to be his staff representative. Staff informed Mr. Geraci that was not an option and that his staff representative had to be Renville county staff or VOA-RRC staff.

## III. PRESENTATION OF EVIDENCE

A. Inmate has been advised of his right to present a statement, or to remain silent, to present documents, including written statements of unavailable witnesses, and for relevant and material witnesses to appear on his behalf at the CDC hearing.

| The inmate | Admits: | | Denies: | X | Silent: | | the charge(s). |
|---|---|---|---|---|---|---|---|

Summary of Inmate's Statement:

During the investigation, the inmate pled not guilty and gave the following statement: "I got threatened by dude. He threatened me so I came and responded to getting in a fight. I was in a fight, not an assault. He struck with closed fists back. This is way beyond 24 hours.

During the CDC hearing the inmate pled not guilty and made the following statement: I was threatened by dude, he swung back at me. This makes it a fight not an assault Also I am being served this incident report in untimely manner.

C. Witnesses

| 1. The inmate requested witnesses: | Yes: | | No: | X |
|---|---|---|---|---|

2. The following witnesses appeared at the CDC hearing:

| Name: | | Register # or Title | |
|---|---|---|---|
| Statement: | | | |
| Name: | | Register # or Title | |
| Statement: | | | |
| Name: | | Register # or Title | |
| Statement: | | | |

3. The following witness(es) requested were not called for the following reasons

| Name: | | Register # or Title | |
|---|---|---|---|
| Reason: | | | |
| Name: | | Register # or Title | |
| Reason: | | | |
| Name: | | Register # or Title | |
| Reason: | | | |

CASE 0:21-cv-00716-WMW-DTS   Doc. 1-1   Filed 03/16/21   Page 30 of 58
Case: 0:21-cv-00392-NEB-KMM     Document #: 1-1   Date Filed: 02/10/2021     Page 2 of 3
CASE 0:20-cv-02661-PAM-ECW   Doc. 7-11   Filed 01/06/21   Page 2 of 3

| 4.  The following witness(es) were unavailable and submitted written statements. | | Yes: | | No: | | N/A: | X |
|---|---|---|---|---|---|---|---|
| Name: | | Register # or Title | | | | | |
| Statement: | | | | | | | |
| Name: | | Register # or Title | | | | | |
| Statement: | | | | | | | |
| Name: | | Register # or Title | | | | | |
| Statement: | | | | | | | |

**D. Documentary Evidence**

In addition to the incident report and investigation, the CDC considered the following documents:

Any documents considered by the CDC are listed in section V of this report.

| E.  Confidential Information was considered by the CDC and was not provided to the inmate. | Yes: | | No: | X |
|---|---|---|---|---|

If yes, the confidential information was not released to the inmate due to safety of individuals and/or the security the institutions.  The information was deemed reliable by the CDC because several individuals provided similar independent information and/or an individual provided specific information that corroborated existing evidence.

**IV.  FINDING OF THE CDC**

| X | The act was committed as charged. |
|---|---|
| | The following act was committed: |
| | No prohibited act was committed.  The incident report was expunged. |

**V.  SPECIFIC EVIDENCE RELIED ON SUPPORT FINDINGS**

The CDC reviewed the rights with the inmate during the CDC hearing.  The inmate confirmed receipt of the rights form and an understanding of the rights.  The inmate also confirmed that a staff representative or witnesses were not requested.

The CDC reviewed the evidence and found there is some evidence to support the charge(s) (if admitted), or the greater weight of the evidence shows you committed the prohibited act(s) (if denied) based on the following:

The incident report states, "On 9/29/20 at 17 48, Mr. Geraci 16492-041 walked up to ███████████who was sitting down at the dining room table. They appear to exchange some words and Mr. Geraci walks away. Seconds later, Mr. Geraci returns to the table ████████is sitting at and throws a total of 6 punches at ████████ hitting him twice in his left eye and once to the body.

Based on the information above, Mr. Geraci is charged with code 101, specifically assaulting any person

During the investigation, the inmate pled not guilty and gave the following statement: "I got threatened by dude. He threatened me so I came and responded to getting in a fight. I was in a fight, not an assault. He struck with closed fists back. This is way beyond 24 hours.  Although the inmate claims to have been provoked, it does not relieve him from his responsibility of maintaining a clear conduct while residing at the RRC. Staff proceeded to pull up camera footage of the incident, where it was identified that Mr. Geraci was the aggressor. Mr. Geraci walked up to the other resident who was sitting down at a dining room table and started throwing punches at him. Mr. Geraci was clearly aware of the BOP and RRC rules and regulations.  His actions of assaulting another resident a not acceptable by VOA-RRC.  During the investigation, the inmate was offered a staff representative that consisted of Renville County Jail staff or VOA-RRC staff (via phone) to ensure that due process was not violated. The inmate refused both of those options and insisted that staff gets ahold of Brenda Mort to be his staff representative. Staff informed Mr. Geraci that was not an option and that his staff representative had to Renville county staff or VOA-RRC staff.

During the CDC hearing the inmate pled not guilty and made the following statement: I was threatened by dude, he swung back at me. This makes it a fight not an assault Also I am being served this incident report in untimely manner. Claiming that the incident report is not being presented to him on a timely manner does not constitute in a defense. Staff created incident report on a timely manner, resident escaped from the facility hours after the incident happened. RRC staff was waiting on RRM office to be notified of inmate's apprehension to conduct the investigation and hearing process. Once RRC was notified of inmate's apprehension, staff proceeded to contact Renville county jail to conduct investigation and hearing process. The inmate has the responsibility to maintain clear conduct while serving his



## Appendix D.  DATA ENTRY INSTRUCTIONS

Each Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) is responsible for the validity and accuracy of the data on all cases resolved at their level.  It is critical that the data is reported correctly and uniformly.

**Prohibited Acts**.  Data collection requirements apply only to the following prohibited acts:

# Code 100 – Killing.
# Code 101 – Assaulting any Person (Serious).
# Code 107 – Taking Hostages.
# Code 114 – Sexual Assault by Force.
# Code 203 – Threatening Another with Bodily Harm.
# Code 205 – Engaging in Sexual Acts.
# Code 206 – Making Sexual Proposals or Threats to Another.
# Code 224 – Assaulting any Person (Less Serious).
# Code 225 – Stalking.
# Code 229 – Sexual Assault without Force.

**SENTRY Screens**.  When an inmate is found to have committed one or more of the prohibited acts listed above, the DHO or UDC enters data on the following SENTRY screens:

# Add Hearings/Findings or Update Status After Procedural Hearing.
# Update Hearing/Findings or Execute/Unexecute Sanctions.

Because data collection is not required at the charging or accusatory levels, there are no additional requirements for the Update Charges screen.

**Data Keying Requirements**.  Four characters are available to enter data on a particular act; the fourth is always used for aiding and abetting or attempts (for example, code 101A).

For the prohibited acts specified above, SENTRY allows three additional characters (fields) for DHOs or UDCs to input data:

# The first field requires data on **type of victim**.
# The second requires data on **type of weapon** used.
# The third applies to the **nature of the injury**.

A fourth, separate field records whether the incident was referred for prosecution.

**Type of Victim**.  The DHO and UDC Chairman must select one of three codes that best identifies the victim's status and enter it in the Additional Tracking Identifier (ATI) field for the prohibited act (e.g., ATI.: <u>S</u>, ATI.: <u>O</u>):



I ' Inmate
S ' Staff
O ' Other

There can be only one victim for each prohibited act.  When there are multiple victims (two or more inmates, or one staff member and one inmate), there must be multiple prohibited acts against the inmate.  If there are multiple acts for the same code, they must be keyed under separate incident report numbers even though the finding could be based on a single incident report.

"Other" is entered when the victim is a visitor, contracting staff, U.S. Marshal, etc.

**Type of Weapons Classification**.  DHOs must review the list of weapons codes starting from the top (code "A") to the bottom (code "N").  Using this rank-ordered review, select the **first** code that **best** describes the most serious weapon the inmate used or attempted to use.  The selection is placed in the second position after the type of victim (e.g. ATI.: S**B**, ATI.: O**F**):

A   gun
B   sharp object (used to inflict cutting injury)
C   pointed object (used to inflict stabbing injury)
D   solid\blunt object (thrown or used to hit)
E   toxic or flammable fluids or substances
F   fists\hands
G   feet\legs
H   bodily fluids\waste (spit, urine, feces, blood, etc.)
J   teeth
K   head
L   water
M   other or unknown
N   no weapon

"Weapons" refers to objects, instruments, or substances listed above that the inmate controlled at the time of the offense, and are considered an element of the offense.

When an inmate threatens to use a weapon that was not readily available or under his or her control at the time of the incident, select code "N", "no weapon."

**Nature of Injury Assessment**.  The level of injury is best assessed by considering the medical treatment required, if any.  Choose the injury code that best describes the most serious injury suffered.  The choice is placed in the third position after type of weapon (e.g., ATI.: SB**4**, ATI.: OF**1**):

1  **No injury** - The victim or medical staff reported no injuries.



2 **Minor injury** - The victim received minor injuries that may have been treated at the facility, or treated at the facility with a possible recommendation for a non-inmate victim to consult with his/her physician.

3 **Moderate injury** - The victim received more serious injuries that generally require treatment at an outside hospital, or, in the case of non-inmate victims, treatment by their own physicians. Moderate injuries are not judged life-threatening.

4 **Major injury** - The victim received injuries that are life-threatening, requiring emergency medical treatment at an outside hospital.

5 **Fatal injury** - The victim received injuries resulting in loss of life.

**Example One**: ATI.: **SB4** – "Staff-**S**" victim, with the weapon being a "sharp object-**B**", and "major injuries-**4**" sustained.

**Example Two**: ATI.: **OF1** – "Other-**O**" victim with the weapon being "fists/hands-**F**", and "no injury-**1**" sustained.

**Referrals for Prosecution (RFP)**. For this system to provide accurate data, it is imperative that Special Investigative Supervisors (SIS) and Special Investigative Agents (SIA) refer assaults for prosecution and record the data in section 25 of the incident report. This is a separate field; the DHO keys either accepted or declined for prosecution by the Assistant U.S. Attorney in the screens for:

\# Add Hearings/Findings.
\# Update Status After Procedural Hearing.
\# Update Hearing/Findings.
\# Execute/Unexecute Sanctions.

The SIS or SIA documents this under "Other Facts" in section 25 of the incident report (e.g., RFP.: **A** for accepted or RFP.: **D** for declined).

se ence. The inmate's time in an RRC should be used to establish positive decision-making patterns for successful entry into society as a law-abiding citizen. The inmate chose to break a rule and the law, showing he needs more time to adjust.

BOP/VOARRC rules and regulations, page 30- Formal Disciplinary Procedures: In the event a resident becomes involved in some form of prohibited act, he or she may be placed in secure custody until a hearing can be held and a decision reached as to the disposition of the case. Whether or not a resident is removed from the VOARRC, the following procedures will be as followed".

Federal Acknowledgement of rules form - signed by Mr. Geraci– indicating he received a copy of and understood said rules and regulations regarding accountability requirements.

## VI. SANCTION RECOMMENDATION BY CDC

The CDC recommends appropriate loss of Good Conduct Time.

## VII. REASON FOR SANCTION(S) OR ACTION TAKEN

The sanctions were recommended to encourage the inmate to make better choices, maintain clear conduct and to ensure that he understands the seriousness of his actions.

## VIII. APPEAL RIGHTS

The inmate has been advised of the CDC findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days through the Administrative Remedy Program.

The inmate should file his appeal to the Administrative Remedy Coordinator, North Central Regional Office, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101.

| CDC Staff: | Josue G. Cruz | Signature: | | Date: | 11/19/20 |

## IX. DISCIPLINE HEARING OFFICER

| | Days: | |
|---|---|---|
| Disallow Good Conduct Time | Days: | 27 |
| Forfeit Non-Vested Good Conduct Time | Days: | 10 |
| Discipline Segregation | Days: | |
| Loss of Privileges Deemed Appropriate by RRC Staff | Days: | |
| Quarters Restriction | Days: | |
| Other: | Days: | |

| Printed Name | Signature | | Date |
|---|---|---|---|
| J. George | J. George | | 12-30-20 |
| Delivered to Inmate by: | N G Wohlman   RGWohlman | Date: | 12-31-20 |

There was a delay in processing the incident report; however, the delay did not hinder your ability to make a defense to the charge.

You acknowledged being in a physical altercation with the other individual.  The charge was reduced to a Code 224, Assault.

sentence. The inmate's time in an RRC should be used to establish positive decision-making patterns for successful entry into society as a law-abiding citizen. The inmate chose to break a rule and the law, showing he needs more time to adjust.

BOP/VOARRC rules and regulations, page 30- Formal Disciplinary Procedures: In the event a resident becomes involved in some form of prohibited act, he or she may be placed in secure custody until a hearing can be held and a decision reached as to the disposition of the case. Whether or not a resident is removed from the VOARRC, the following procedures will be as followed".

Federal Acknowledgement of rules form - signed by Mr. Geraci– indicating he received a copy of and understood said rules and regulations regarding accountability requirements.

## VI.  SANCTION RECOMMENDATION BY CDC
The CDC recommends appropriate loss of Good Conduct Time.

## VII.  REASON FOR SANCTION(S) OR ACTION TAKEN
The sanctions were recommended to encourage the inmate to make better choices, maintain clear conduct and to ensure that he understands the seriousness of his actions.

## VIII.  APPEAL RIGHTS
The inmate has been advised of the CDC findings, specific evidence relied on, action and reasons for the action.  The inmate has been advised of his right to appeal this action within 20 calendar days through the Administrative Remedy Program.

The inmate should file his appeal to the Administrative Remedy Coordinator, North Central Regional Office, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101.

| CDC Staff: | Josue G. Cruz | Signature: | | | Date: | 11/19/20 |
|---|---|---|---|---|---|---|

## IX.  DISCIPLINE HEARING OFFICER

| | | Days: | |
|---|---|---|---|
| Disallow Good Conduct Time | | Days: | 27 |
| Forfeit Non-Vested Good Conduct Time | | Days: | 10 |
| Discipline Segregation | | Days: | |
| Loss of Privileges Deemed Appropriate by RRC Staff | | Days: | |
| Quarters Restriction | | Days: | |
| Other: | | Days: | |

| Printed Name | Signature | | Date |
|---|---|---|---|
| J. George | | J. George | 12-30-20 |
| Delivered to Inmate by: | N G Wohlman | W Wohlman | Date: | 12-31-20 |

There was a delay in processing the incident report; however, the delay did not hinder your ability to make a defense to the charge.

You acknowledged being in a physical altercation with the other individual.  The charge was reduced to a Code 224, Assault.

Dec 31, 2020

To Ned Wohlman

From: Michael Geraci

I Just called the clerk of courts today and found out my 2241 habeas petition was never recieved. I turned it in to jail staff with a $5 release of funds 3 weeks ago - where is it?

Michael,

All I can tell you is that on 12/02/20 an attempt was made to print a check from your account and for some reason the check was either no clear or the routine number was printed in an area it is not supposed to be printed. Frankly, I don't remember the exact reason other than I was asked to reprint the check. I did that a couple of days later and sealed the check in the envelope and mailed it. I honestly cannot remember the day I did that, but there still would be no reason it has not been delivered to the court. was printed from your account in the amount of $5.00. I have attached both your account running balance and a screen showing the information that was entered to print on the check. If you want to check daily if it is there, we will pay for the call(s). There is no reason I can think of why it would not be there. I have no way to track a piece of mail once it is in the outgoing mailbox. I would appreciate it if when you call it has been delivered, please let me know.

Ned Wohlman, JA
RCSO

# Check

| | |
|---|---|
| Check No: | 3485 |
| Check Date: | 12/02/20 |
| Check Time: | 7:43 |
| Total Check Amount: | 5.00 |

ID: 3485

Payee Name: U.S. Clerk of Courts
Address: 300 Sotuh 4th Street Suite 202
City/State/Zip: Minneaplois, MN 55415

For: GERACI, Michael/Inm Request

CO: Veronica E

| Reprint Check Preview | | Close |

This is the only check that was printed despite misspelling south and minneapolis this check was printed and cleared



| Date: | Transaction Type: | Billed: | Received: | PaidOut: | Comment: |
|---|---|---|---|---|---|
| 11/29/2020 | Canteen | $5.00 | | | |
| 11/30/2020 | Canteen | $33.19 | | | |
| 12/1/2020 | Canteen | $9.70 | | | |
| 12/1/2020 | Canteen Return | | $1.65 | | |
| 12/1/2020 | Canteen | $10.00 | | | |
| 12/1/2020 | Canteen | $10.00 | | | |
| 12/1/2020 | Canteen Return | | $10.00 | | |
| 12/1/2020 | Canteen | $16.00 | | | |
| 12/1/2020 | Canteen | $16.50 | | | |
| 12/2/2020 | Inmate Refund | | | $5.00 | GERACI, Michael/Inm Request |
| 12/2/2020 | Canteen | $14.00 | | | |
| 12/3/2020 | Canteen | $13.00 | | | |
| 12/4/2020 | Canteen | $22.77 | | | |
| 12/4/2020 | Canteen | $10.00 | | | |
| 12/5/2020 | Canteen | $15.76 | | | |
| 12/6/2020 | Canteen | $14.00 | | | |
| 12/5/2020 | Canteen | $12.00 | | | |
| 12/7/2020 | Canteen | $83.36 | | | |
| 12/7/2020 | Canteen | $14.00 | | | |
| 12/7/2020 | Canteen | $2.00 | | | |
| 12/8/2020 | Canteen | $14.00 | | | |
| 12/8/2020 | Canteen | $10.00 | | | |
| 12/8/2020 | Canteen | $14.05 | | | |
| 12/11/2020 | Canteen | $10.00 | | | |
| 12/11/2020 | Canteen | $10.00 | | | |
| 12/12/2020 | Canteen | $8.00 | | | |
| 12/12/2020 | Canteen | $20.00 | | | |
| 12/12/2020 | Canteen | $10.00 | | | |
| 12/12/2020 | Canteen | $37.54 | | | |
| 12/13/2020 | Canteen | $10.00 | | | |
| 12/14/2020 | Canteen | $30.00 | | | |
| 12/14/2020 | Canteen | $12.00 | | | |

661-PAM-ECW   Document #: 1-3   Date Filed: 12/28/21

Name *Michael Gersei*
Renville County Jail
104 4th Street South
Olivia, MN 56277

X-RAYED
BY USMS

RECEIVED
BY MAIL
DEC 2 8 2020
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
DEC 28 2020
U.S. DISTRICT COURT MPLS

CLERK

Exhibit
turned into Jail staff sealed on
12/08/2020  Writ of habeas Corpus  Michael RomeoBerci v. Ned Wohlman

U.S. District Court of MN
US Courthouse
300 South 4th Street
Suite 202
Minneapolis, MN 55415

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
## for the

RECEIVED
BY MAIL

DEC 2 8 2020

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**Michael Geraci**
_____
Petitioner

v.

**Ned Wohlman**
_____
Respondent
(name of warden or authorized person having custody of petitioner)

)
)
)
)
)
)
)
)
)
)

Case No. 20-cv-2661 PAM/ECW
_____
(Supplied by Clerk of Court)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. (a) Your full name: **Michael Romeo Geraci**
   (b) Other names you have used:

2. Place of confinement:
   (a) Name of institution: **Renville County Jail**
   (b) Address: **104 4th Street**
   **Olivia MN 56277**
   (c) Your identification number: **16492-041**

3. Are you currently being held on orders by:
   ☑ Federal authorities   ☐ State authorities   ☑ Other - explain:
   **Federal Bureau of Prisons Residential Reentry Center**

4. Are you currently:
   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☑ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
   (a) Name and location of court that sentenced you: **US District of Minnesota**

   (b) Docket number of criminal case: **12-CR-134**
   (c) Date of sentencing: **2-13-2013**
   ☐ Being held on an immigration charge
   ☐ Other (explain): _____

SCANNED
DEC 28 2020
U.S. DISTRICT COURT MPLS

Page 2 of 10



**U.S. Department of Justice**

United States Attorney
District of Minnesota

---

*600 United States Courthouse*          *Telephone:  (612) 664-5600*
*300 South Fourth Street*                        *Fax:  (612) 664-5787*
*Minneapolis, MN  55415*

December 30, 2020

The Honorable Elizabeth Cowan Wright
United States Magistrate Judge
316 N. Robert Street, Suite 646
St. Paul, MN 55101

      RE:   *Michael Romeo Geraci v. Ned Wohlman*
             Civil No. 20-2661 (PAM/ECW)

Magistrate Judge Wright:

     Petitioner named a non-federal Respondent as the lone Respondent in the above-captioned matter.  The United States does not represent this Respondent, but wishes to respond to the substance of the habeas Petition at issue.  We would therefore respectfully request that the United States be added as a Respondent in this matter.

                                 ERICA H. MacDONALD
                                 United States Attorney

                                 s/ Chad A. Blumenfield

                                 BY: CHAD A. BLUMENFIELD
                                 Assistant U.S. Attorney
                                 Attorney ID Number 387296
                                 Chad.Blumenfield@usdoj.gov

cc:        Petitioner Michael Romeo Geraci
                Reg. No. 16492-041
                Reville County Jail
                104 4th Street
                Olivia, MN 56277

CASE 0:21-cv-00716-WMW-DTS Doc. 1-1 Filed 03/16/21 Page 42 of 58
Case: 0:21-cv-00541-WMW-DTS    Document #: 1-1    Date Filed: 02/24/2021    Page 8 of
Case: 0:20-cv-02661-PAM-ECW    Document # 4-0    Date Filed: 12/30/2020    Page 1 of 2

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL ROMEO GERACI, | Case No. 20-CV-2661 (PAM/ECW) |
| Petitioner, | |
| v. | **ORDER** |
| NED WOHLMAN, | |
| Respondent. | |

This case is before the Court on Petitioner Michael Romeo Geraci's ("Petitioner")

Petition for a Writ of Habeas Corpus (Dkt. 1), Petitioner's Emergency Motion for

Expedited Proceedings (Dkt. 2), and a letter filed by the United States of America asking

to be added as a Respondent in this matter because it wishes to respond to the substance

of the Petition (Dkt. 3).[1]  Based on the files, records, and proceedings herein, **IT IS**

**ORDERED THAT**:

1.  The Clerk of Court is directed to add the United States of America as a

    Respondent in this matter,

2.  Respondents are directed to file an answer to the Petition for a Writ of

    Habeas Corpus within 7 days of this Order's date, certifying the true cause

---

[1]    The United States of America states that Petitioner named a non-federal
Respondent as the lone Respondent, who is not represented by the United States. (Dkt.
3.)

CASE 0:21-cv-00716-WMW-DTS   Doc. 1-1   Filed 03/16/21   Page 43 of 58
Case: 0:21-cv-00541-WMW-DTS     Document #: 1-1     Date Filed: 02/24/2021     Page 9 of
Case: 0:20-cv-02661-PAM-ECW     Document 14-0   Date Filed: 12/30/2020   Page 2 of 2

and proper duration of Petitioner's confinement and showing cause why the writ should not be granted in this case.

3.    Respondents' answer should include:

    a.    Such affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's incarceration, in light of the issues raised in the petition;

    b.    A reasoned memorandum of law and fact fully stating Respondents' legal position on Petitioner's claims; and

    c.    Respondents' recommendation on whether an evidentiary hearing should be conducted in this matter.

4.    If Petitioner intends to file a reply to Respondents' answer, he must do so within 7 days of the date when the answer is filed.  Thereafter, no further submissions from either party will be permitted, except as authorized by Court order.

5.    Petitioner's Emergency Motion for Expedited Proceedings (Dkt. 2) is **GRANTED** to the extent that this Court has imposed the deadlines set above, and is otherwise **DENIED**.

Dated: December 30, 2020

*s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

Michael Geraci
Renville County Jail
104 South 4th Street
Olivia, MN 56277

SCANNED
FEB 10 2021
U.S. DISTRICT COURT MPLS

2nd writ of habeas
corpus
Legal mail filed

RECEIVED
BY MAIL
FEB 10 2021
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

United States District Court
300 South 4th Street
Minneapolis MN 55415



Minneapolis MN 554
MON 08 FEB 2021
PM 2

FOREVER / USA
FOREVER / USA
FOREVER / USA
FOREVER / USA

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
## for the
### District of Minnesota

~~Michael Geraci~~
*Petitioner*

v.

Ned Wohlman
*Respondent*
(name of warden or authorized person having custody of petitioner)

)
)
)
)
)
)
)
)
)
)
)

21-cv-392 NEB/KMM

Case No. _____
(Supplied by Clerk of Court)

RECEIVED
BY MAIL
FEB 10 2021
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. (a) Your full name: **Michael Romeo Geraci**
   (b) Other names you have used: _____

2. Place of confinement:
   (a) Name of institution: **Renville County Jail**
   (b) Address: **104 South 4th Street**
   **Olivia MN 56277**
   (c) Your identification number: **16493-041**

3. Are you currently being held on orders by:
   ☒ Federal authorities      ☐ State authorities      ☐ Other - explain:
   _____

4. Are you currently:
   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
   (a) Name and location of court that sentenced you: **United States District Court**
   **for the District of Minnesota**
   (b) Docket number of criminal case: **12-CR-134**
   (c) Date of sentencing: **2-73-2013**
   ☐ Being held on an immigration charge
   ☐ Other (explain): _____

   _____
   _____

SCANNED
FEB 10 2021
U.S. DISTRICT COURT MPLS

Page 2 of 10

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MICHAEL GERACI,                              Case No. 21-CV-0392 (NEB/HB)

             Petitioner,

v.                                                                **ORDER**

NED WOHLMAN,

             Respondent.

---

IT IS HEREBY ORDERED THAT:

1.    Respondent is directed to file an answer to the petition for a writ of habeas

      corpus of Petitioner Michael Geraci, within 10 days of the date of this

      Order, certifying the true cause and proper duration of Petitioner's

      confinement and showing cause why the writ should not be granted in this

      case.

2.    Respondent's answer must include:

      a.    Such affidavits and exhibits as are needed to establish the lawfulness

            and correct duration of Petitioner's incarceration, in light of the

            issues raised in the petition;

      b.    A reasoned memorandum of law and fact fully stating Respondent's

            legal position on Petitioner's claims (including whether some or all

            of the petition is moot); and

c.       Respondent's recommendation on whether an evidentiary hearing

should be conducted in this matter.

3.    If Petitioner intends to file a reply to Respondent's answer, he must do so

within 10 days of the date when the answer is filed.  Thereafter, no further

submissions from either party will be permitted, except as authorized by

Court order.

4.    Petitioner's Application to Proceed in District Court Without Prepaying

Fees or Costs [ECF No. 2] is **GRANTED**.


Dated: March 1, 2021                         _s/ Hildy Bowbeer_____
                                             Hildy Bowbeer
                                             United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civ. No. 21-cv-00392-NEB-HB

Michael Romeo Geraci,

             Petitioner,

      v.

Ned Wohlman,

             Respondent.

**NOTICE OF APPEARANCE**

      PLEASE TAKE NOTICE that Chad A. Blumenfield, Assistant United States Attorney, hereby notes his appearance as counsel for the respondent with respect to the above-referenced matter.  This appearance does not waive any defense or service as required by the Federal Rules of Civil Procedure.

Dated: March 5, 2021

                W. ANDERS FOLK
                Acting United States Attorney

                s/ Chad A. Blumenfield

                BY: CHAD A. BLUMENFIELD
                Assistant U.S. Attorney
                Attorney ID Number 387296
                600 United States Courthouse
                300 South Fourth Street
                Minneapolis, MN 55415
                Phone:   612-664-5600
                Chad.Blumenfield@usdoj.gov



Renville County Jail

*Official Inmate Grievance*

| TO: Ned Wohlman | DATE: 2-12-21 | Responsible County: Renville |
| FROM INMATE: Michael Geraci | HOUSING ASSIGNMENT: C103 | STATUS: Fed |

Instructions: In box A state your grievance in a brief, clear and understandable manner. If vulgar language is used the grievance will be rejected.
In box B list any actions you have taken to resolve the issue and state which staff members you have spoken to.

**Box A**

Hey I am inquiring into whether when you are carrying out your duties as it pertains to me as a Federal inmate are you doing it under the authority of State law or Federal Law?

I am inquiring because I have steps to follow in litigation and I am confused in federal prison you would would be under federal authority but you have no federal authority so your official duties as Jail administer are under the color of state law?

I feel you personally have blocked access to courts in violation of my Constitution and had Violated my 4th Amendment rights of unlawfully searching and seizing my legal documents and my 5th Amendment due process rights by Illegally reading my mail and contacting BOP.

**Box B**

Grievancing to you, requesting release to no avail. requesting work release. request RRC.

No Avail.

Your grievance has been received and will be processed.

_____    _____
Signature of Grievance Coordinator    Time and Date Received

Attachment A

02/04/2020

## Official Inmate Grievance Initial Review Response

☒ Informational Only

☐ Found In Favor of Inmate

| TO: (Inmate) Michael GERACI | Grievance Date: 11/28/20 | Response Date: 12/7/20 | ☐ Denied |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

Michael,

I think you know this is really a BOP issue, but I can tell you that if you are picked up on the federal warrant only, meaning no other local charges, you would get credit for that time because you were sitting only on the federal warrant. If there were any local charges, the time would not count for the feds.

My question to you is if you had any hearings at the VOA, either by phone or in person? The only hearing you would not attend is the final DHO determination, but that decision is subject to appeal. If I were going to conjecture what the number of days are from, I would say 7 days of the new out date are from simply moving the out date back 7 days as you would need to serve those days. I can only assume the balance of the days was due to the actual sanction for the escape.

If I had a computation sheet or a DHO sheet I could confirm this or at least find out the reasoning for the # of days. I know this doesn't give you much information, but I would suggest using the Administrative Appeal process to the region.

Sincerely,

Ned Wohlman, JA
RCSO

| Ned Wohlman | | Jail Administrator | 12/7/20 | |
|---|---|---|---|---|
| Print Name of Grievance Officer | Signature of Grievance Officer | Title | Date | Attachment B |

02/04/2020



# Renville County Jail
## Official Inmate Grievance



2742
Apache Rd
N.s?

| TO: Ned Jail staff | DATE: 11-28-20 | Responsible County: Renville |
|---|---|---|
| FROM INMATE: Michael Geraci 16492041 | HOUSING ASSIGNMENT: Pod D | STATUS: SBOP/Federal |

Instructions: In box A state your grievance in a brief, clear, and understandable manner. If vulgar language is used the grievance will be rejected.
In box B list any actions you and taken to resolve the issue and state which staff members you have spoken to.

**Box A** I have an issue with good time credits, when I released from Federal Prison on July 15th 2020 my Statutory Release Date was 12-23-2020. On 09-30-2020 the U.S. marshalls issued warrant for Absconding/Escape On 10-7-2020 I was picked up on this warrant by Millacs Police and Aitkin County Police and Booked into jail on this warrant. I have not pleaded guilty or been adjudicated in any other Case in Aitkin. I was transfered to sherburne County November 2nd, then Nov. 17th transfered to Renville on Nov. 20th I learned my SRD was changed without due process to 01-23-2021 or 31 days. At most I was out of custody 7 days so I can accept 12-30-20 as my SRD but an extra month without Due process unacceptable

**Box B** I've wrote numerous kites and grievances at Aitkin and Sherburn. I've called USM office and I wrote the FBOP. I've spoke with the RRC V&A staff

Your grievance has been received and will be processed.

Signature of Grievance Coordinator

12-7-20
Time and Date Received

Attachment A

Revised 10/01/14  J:\JAIL MAIN\Inmate Forms\GRIEVANCE

CASE 0:21-cv-00716-WMW-DTS Doc. 1-1 Filed 03/16/21 Page 52 of 58
Case: 0:21-cv-00541-WMW-DTS Doc. 1A Date Filed: 02/24/2021 Page 11 of
CASE 0:12-cr-00134-DSD-JJG Doc. 120 Filed 01/21/21 Page 3 of 6

*From my compassionate Release*

COVID-19 at the VOA, which posed an unacceptable risk to his health.  The court again denied the motion.

Geraci now moves a fourth time for compassionate release.  He contends that his current place of confinement is overrun with COVID and that 28 of the 39 inmates have tested positive for the virus.  He requested release from the warden of the facility on December 7, 2020.  According to Geraci, the warden denied the request because he did not believe he had the authority to grant such relief.  Geraci now states that in addition to suffering from asthma, he also is "now being monitored for hypertension or high blood pressure."  ECF No. 117, at 2-3.  He also moved for the appointment of counsel to assist him with his motion.  Contrary to Geraci's assertion, as of December 22, 2020, no inmates in the Renville County Jail were COVID-19 positive.  ECF No. 119, at 2.

*Neal spoke by phone with Judge Doty on Dec. 22, 2020 told me he was honest with him please see attach incident report.*

## DISCUSSION

The First Step Acts allows for a reduction in sentence or compassionate release where "extraordinary and compelling circumstances warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  Before a defendant may seek such relief from a district court, however, he must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [30 days must have elapsed] from the receipt of such a request by the warden of the

3



Case: 0:21-cv-00541-WMW-DTS Document #: 1-1 Date Filed: 02/24/2021 Page 12 of
Case: 0:20-cv-02661-PAM-ECW Document #: 20-2 Date Filed: 02/02/2021 Page 12
of 16




# *Renville County Jail*
## Supplemental Report Form

| Inmate Name | Salean,Saladean | Location of Offense | B pod | Date of Report | 12-15-20 | Date of Offense | 12-15-20 | Time of Offense | 0930am |

**Violation Report Summary:** On Tuesday 12-15-20 at approximately 0930am inmate Salean has been ordered from CO Penny 664 to pack up their belongings and they are to be moved into B pod, As Salean entered B pod he turned around and started to yell that he was not going further in the pod because all the other inmates in the pod are tested possitive for Corvid. Co Steve 657, Co Marion643, and Co Penny 664 were standing in the hall arguing with inmate Salean. At this time we requested backup from Jacques 607 and Mathwig 602.
After several minutes of yelling and talking back in the hallway, the option of going into B pod was given to the inmate again from Mathwig. Again Salean disobeyed a direct order. At this time Mathwig and Steve assisted Salean with walking up the stairs to B 201 were he will be housed. Inmate Salean still at that time was very defensive,yelling and arguing with Jacques and Mathwig and was refusing to go into his cell. After several minutes of this Salean pushed his Tote into the cell and the cell door was closed. Salean will be given a 23 hour lockdown for Failure to obey order from correction staff and police officer, Tampering with jail property.

| Print Officer's Name | Marion | Officer Signature | *Marion 643* | Badge # | 643 | Date | 12-15-20 |

*PRINT 3 COPIES*   SCAN AND GIVE TO INMATE   COPY TO 3 RING BINDER   JAIL ADMINISTRATION



**GERACI, MICHAEL**
1/25/2021

Beginning Balance: $63.60

| | | |
|---|---|---|
| Blistex Lip Balm | $2.50 |
| Dial Bar Soap | $1.55 |
| Lady Speed Stick Shower Fresh Deodorant | $4.00 |
| Softee Mango Butter Hair Dress | $4.57 |
| Stamp – *refunded* | $1.10 |
| Suave Green Apple Shampoo | $3.55 |

OUT OF STAMPS
Refunded

– Billed for 2 envelopes –

Bal – $147.43

01-26-2021

### Canteen Order

Name Geraci, Michael

| QTY | SKU | Description |
|---|---|---|
| 5 | 6002 | Oatmeal |
| 4 | 6015 | PBwafers |
| 1 | 4004 | Hot chocolate |
| 8 | 1002 | Stamps – OUT |
| 1 | 4000 | Sierra mist |

**GERACI, MICHAEL**
1/26/2021

Beg... ...ce:

| | | |
|---|---|---|
| 1 | Nestle Hot Chocolate (Single Serving) |
| 4 | PB Wafers |
| 5 | Quaker Oatmeal Maple and Brown Sugar(1 pk |
| 1 | Sierra Mist Zero |

**CANTEEN RECEIPT**

Canteen Total: $8.70
Ending Balance: $36.73

## Ned Wohlman

| | |
|---|---|
| **From:** | Jail Grievance Mailbox |
| **Sent:** | Sunday, February 28, 2021 7:14 PM |
| **To:** | Ned Wohlman |
| **Subject:** | FW: Inmate Request: Official Inmate Grievance |

**From:** Michael Romeo Geraci [mailto:request+590667_25c95771-cd69-4a4b-a703-bc5b3db2295d@inmates.reliancetelephone.com]
**Sent:** Sunday, February 28, 2021 6:49 PM
**To:** Jail Grievance Mailbox <jailgrievance@renvillecountymn.com>
**Subject:** Inmate Request: Official Inmate Grievance

RENVILLE COUNTY SECURITY NOTICE:
  WARNING: This message originated from outside Renville County. Use caution when clicking hyperlinks or opening attachments.

Michael Romeo Geraci [5332] at Wireless
Request Type: Official Inmate Grievance
Request Time: 02/28/2021 06:48:35 PM

State your grievance in a brief, clear and understandable manner. If vulgar language is used the grievance will be rejected.

requestText
-----------
To Ned Wohlman
Re: Staff Misconduct

I'd like to speak with you tomorrow at your earliest convienance about a certain staff member that has been involved in misconduct and commitong Federal offenses and is now threatening my person with harm and my liberty.

List any actions below that you have taken to resolve the issue. State which staff members you have spoken to.

actionTaken
-----------
I can't speak privately hear i have tried to mind my business but your staff members just seem to want to harrass me to death

**Ned Wohlman**

| | |
|---|---|
| **From:** | Jail Kites Reliance Mailbox |
| **Sent:** | Tuesday, March 2, 2021 8:56 AM |
| **To:** | Ned Wohlman |
| **Subject:** | FW: Inmate Request: General Request(Kite) |

**From:** Michael Romeo Geraci <request+592033_447297cf-9257-487a-a3d2-3a00fc98dd6e@inmates.reliancetelephone.com>
**Sent:** Tuesday, March 2, 2021 7:18 AM
**To:** Jail Kites Reliance Mailbox <jailkites@renvillecountymn.com>
**Subject:** Inmate Request: General Request(Kite)

RENVILLE COUNTY SECURITY NOTICE:
   **WARNING: This message originated from outside Renville County. Use caution when clicking hyperlinks or opening attachments.**

Michael Romeo Geraci [5332] at Wireless
Request Type: General Request(Kite)
Request Time: 03/02/2021 07:17:44 AM

Be Specific:

requestText
-----------
To Ned Wohlman,Jail Admin
Re: previous ignored request

Sir, I have requested that you please provide me with copies of my selected grievances/kites to you to be printed and provided to me also for security purposes I request that you block any personal otherthan Melissa Swyter or higher Authority from reading inmate grievances especially mine.... so to simplify this just print me two copies of every grievance/kite since sunday i have sent you including this one please sir

I have also had officer Marion forward my request I sent to Melissa to prepare a IFP affidavit for me. The last one she did and I sent out mysteriously has not yet reached the court in over 2 weeks so I'll file another and I am asking you to do this I have pending deadlines and since you have something to do with the checks and trust fund you can type me up this form and provide it correct please and thank you.

**Ned Wohlman**

| | |
|---|---|
| **From:** | Jail Kites Reliance Mailbox |
| **Sent:** | Monday, March 1, 2021 6:28 PM |
| **To:** | Ned Wohlman |
| **Subject:** | FW: Inmate Request: General Request(Kite) |

**From:** Michael Romeo Geraci <request+591503_7dca0f4c-6a4a-484f-bc5c-
09569b772a7e@inmates.reliancetelephone.com>
**Sent:** Monday, March 1, 2021 2:10 PM
**To:** Jail Kites Reliance Mailbox <jailkites@renvillecountymn.com>
**Subject:** Inmate Request: General Request(Kite)

RENVILLE COUNTY SECURITY NOTICE:
    WARNING: This message originated from outside Renville County. Use caution when clicking hyperlinks or
opening attachments.

Michael Romeo Geraci [5332] at Wireless
Request Type: General Request(Kite)
Request Time: 03/01/2021 02:09:46 PM

Be Specific:

requestText
-----------
To: Ned Wohlman,Jail Admin.
Re: response to grievances

Listen you are misinterpreting both... Speaking to you further will just complicate the matter. I am asking that
you please print a copy of each for me and provide a copy to be sent as legal mail
1 to my probation officer
1 to the FBI office in brookly park

I am well aware that staff read my text messages that wasnt the issue what i said was your staff member read
my messages and remembered my story about the VOA on the front page of the pioneer press so i dont care that
my messages are monitored but when your staff threaten me with harm I am supposed to "lock my self into my
cell" great advice jail adminstrator please seal my last 2 grievances from being read by any other jail staff please
too.. I understand Mondays are busy days but routine details sometimes need to be sidetracked when an inmate
is telling you he is being threatened by staff that is introducing contraband to others in your jail among other
federal crimes. So please just print me copies of these past three messages and provide me 2 envelopes for legal
mail purposes. Thank you

**Ned Wohlman**

| | |
|---|---|
| **From:** | Jail Grievance Mailbox |
| **Sent:** | Wednesday, March 3, 2021 8:23 AM |
| **To:** | Ned Wohlman |
| **Subject:** | FW: Inmate Request: Official Inmate Grievance |

**From:** Michael Romeo Geraci <request+591067_5e454f27-1466-4727-90ac-
5998cac006d9@inmates.reliancetelephone.com>
**Sent:** Monday, March 1, 2021 9:56 AM
**To:** Jail Grievance Mailbox <jailgrievance@renvillecountymn.com>
**Subject:** Inmate Request: Official Inmate Grievance

**RENVILLE COUNTY SECURITY NOTICE:**
  **WARNING: This message originated from outside Renville County. Use caution when clicking hyperlinks or opening attachments.**

Michael Romeo Geraci [5332] at Wireless
Request Type: Official Inmate Grievance
Request Time: 03/01/2021 09:56:10 AM

State your grievance in a brief, clear and understandable manner. If vulgar language is used the grievance will be rejected.

requestText
-----------
To Ned Wohlman
Grievance last night

I'd like two copies printed and sealed provided to me. I feel you do not have my safety concerns as a priority since these type of allegations would reflect poorly on your facility... if you think these were baseless allegations against two of your officers why do think I was trying to relay private information to my probation officer? Your officer snooped through my messages and saw that I recently wrote to Mara Gottfried of the Pioneer Press and assumed I was turning them in and began threatening me so I turned to you for help and you Ignored me so please just print me two copies of both last nights grievance and this one and bring me two envelopes please

List any actions below that you have taken to resolve the issue. State which staff members you have spoken to.

actionTaken
-----------
I wrote you a grievance but these are not private

1